On Rehearing.
 

 ODOM, J.
 

 On original hearing we held that the provision in section 2, Act No. 236 of 1920, which provides that said act “shall not apply to any person, firm, partnership, association, co-partnership or corporation, '* * * holding a duly executed power of attorney from the owner for the sale, leasing or rental of real estate,” has reference only to those persons, firms, etc., who are not otherwise engaged in the real estate business, and who act as the “ ‘alter ego’ of an owner in an isolated transaction.”
 

 In the brief filed in support of their application for rehearing, counsel for plaintiff say that while they do not concede that the court’s holding on the constitutional question raised is correct, yet they do not care to re-argue the ease on that point. On this branch of the case we have nothing to say further than that we think our holding is correct and we adhere to it.
 

 The point stressed in the application for rehearing, and now relied upon principally by plaintiffs, is that plaintiff held a power of attorney from the owner, and counsel say in their brief, “Under the plain language of the act, therefore appellants were not required to be licensed under its provisions.” We-granted a rehearing in order that we might consider this point further.
 

 After a most careful consideration of the language of the act, construing all of its provisions together, and keeping in mind its evident purposes, our final conclusion is, and we hold, that even though plaintiffs did hold a “power of attorney” from the owner of the lots they are not exempt from the provisions of the act under the circumstances .here disclosed. To hold otherwise would destroy the act, as we shall presently show.
 

 The plaintiff concern has its domicile in Texas and, at the time these transactions took place, had an office in Shreveport, La. At the time its contract with Roberts, which was in writing, was entered into and for many years prior thereto, it was engaged in the business of selling real estate and made a specialty of handling subdivisions. It classed itself as a “Realtor” and was a member of the “National Real Estate Board.” Just where it carried on its activities prior to coming to this state is not disclosed, but presumably in Texas, where it had its domicile, and there is no testimony that it handled any real estate here other than the subdivision owned by Roberts, which consisted of 405 lots. Mr. H. O. Trentman, a member of the plaintiff firm, testified that after entering into the contract with Roberts, his company sold all the lots of the subdivision and that to do so they “put on” what he referred to as “campaigns,” which, as shown by
 
 *863
 
 the record, were extensively advertised in circulars printed and distributed at plaintiffs’ expense. Plaintiffs’ duty under the contract was to find purchasers for the lots and to have them enter into contracts of sale as per the stipulations and terms made by the owner. The sales contracts obtained by plaintiff from prospective purchasers provided that the price of lots should be paid in installments, and that in case the purchaser failed to pay all installments, the contract was at an end and another purchaser was to be found for the lot. In case the purchaser found by plaintiff paid all installments, then a deed conveying full title was to be executed by the owner in person. Plaintiffs were to and did receive compensation for their services, the nature and amount of which being immaterial. Section 2, Act No. 236 of 1920 defines the term “real estate broker” as follows:
 

 “That a real estate broker within the meaning of this Act is any person, firm, partnership, association, co-partnership or corporation, who for a compensation or valuable consideration
 
 sells or offers for sale,
 
 buys or offers to buy,
 
 or negotiate the purchase or sale or exchange of real estate,
 
 or who leases or offers to lease or rents or offers for rent,
 
 any real estate
 
 or the improvements thereon
 
 for others, as a whole or partial vocation.”
 
 (Italics ours.)
 

 A “real estate salesman,” as defined by the act, is one who is employed by a licensed “real estate broker” to sell or offer for sale real estate belonging to another.
 

 Plaintiffs, when they came to this state, entered into a written contract with the owner of a subdivision, consisting of 405 lots, under which they were authorized to and did, for a compensation or valuable consideration, offer for sale and. sell real estate. They maintained an office and were engaged in that business for more than eighteen months. They were therefore “real estate brokers,” as defined by the act.
 

 But plaintiffs say they acted under a power of attorney from the owner for the sale of real estate and were for that reason exempt from the provisions of the act.
 

 A mandate or procuration, says the Civil Code, art. 2985, “is an act by which one person gives power to another to transact for him and in his name, one or several affairs.” Any written instrument by which one person gives to another authority to act for him is a power of attorney. Plaintiffs are real estate brokers and had written authority from the owners of the lots of a subdivision to “sell said lots according to the attached copy of contract marked Exhibit B, to execute said contracts on behalf of the owner, to collect and enforce payments under the same.” Plaintiffs were to “put on sales” of the lots and to pay all expenses of platting and marking the lots as well as all expenses for advertising, etc. But they were not authorized to execute deeds, which were to be signed by the owner. Paragraph 7 of the contract provides that:
 

 “The owner agrees to execute all deeds by warranty deed to any lot or lots when paid for under the terms of the contract attached hereto and marked Exhibit B, and hereby authorizes the agents to execute for him
 
 •contracts
 
 of sale on terms as provided in Exhib
 
 *865
 
 it B, as lots may be sold during the term of this contract, and the owner agrees to carry out all covenants of the contract attached hereto and marked Exhibit B,” etc.
 

 In the contract, Roberts is referred to as the owner and the Trentman Company as “agents,” and it declares that the “owner is desirous of obtaining the services of the parties of the second part (Trentman Company) as
 
 selling agents
 
 of and for said property.”
 

 This contract conferred upon these plaintiffs power and authority to sell the property in the sense only that they were to find purchasers and make sales contracts with them in the name of the owner, the deeds to be executed by the owner when final payments were made. This written instrument is a power of attorney to sell real estate in the sense the term “to sell” is ordinarily used in real estate broking contracts.
 

 The question is whether these real estate brokers are exempt from the provisions of Act No. 236 of 1920 by virtue of this power of attorney. If it be held that they are, then the act is a dead letter. If the Legislature meant to exempt from the provisions of the act all those, whether brokers or not, who hold written authority from the owners of real estate to negotiate sales therefor for compensation, it is hard to imagine any case where a real estate broker would not be exempt, because brokers, for their own protection and in order that they may have a basis on which to work, always get written authority from their clients to negotiate sales. If they do not do so as a practice, it would be within their power to defeat the purposes of the act and escape its provisions merely by securing written authority in every case to negotiate the sale.
 

 We have said that the power of attorney held by these brokers was to negotiate the sales and not complete them. But even if they had been given full authority by the owner to complete the sales by executing deeds in the name of the owner, they would not be exempt. The exemption referred to was not intended to apply to persons who sell real estate as a business and who represent the owner either by negotiating sales or in consummating transactions, on commission or for compensation. The act was intended to have effect and the Legislature did not intend that its provisions could be defeated by the persons engaged in the business which it sought to regulate. The exemption was not intended to protect those engaged .in selling real estate as a business.
 

 A more reasonable and natural construction or interpretation of the term “power of attorney” as used in the act is that it means written authority to act in the place and stead of the owner in consummating a particular or isolated transaction for the convenience or accommodation of the principal. Article 2986 of the Civil Code provides that “mandate may take place in five different manners: For the interest -of the person granting it alone; for the joint interest of both parties,” etc.
 

 The “power of attorney” referred to in the Act No. 236 of 1920 means that which is “for the interest of the person granting it alone,” and not that which is for the “joint interest of both parties.” The latter is the kind of a “power of attorney” granted by an owner to
 
 *867
 
 a broker to negotiate or to consummate sales for compensation.
 

 Our original judgment is correct and is reinstated and made the final judgment of the court.
 

 OVERTON, J., dissents.